## SUPREME COURT.

### JACKSON agt. FASSITT & WASHBURN (two causes.)

The *service* of a copy of the *case and exceptions* is equivalent to a formal *notice of appeal (following the case of Sherman agt. Wells,* 14 *How. Pr. R.)*

By §§ 264 and 265 of the Code, *motions* for *new trials* are restricted to cases in which *verdicts* have been rendered in trials before *juries*.

The liberty granted by a judge, or the court, to *enter up judgment for the better security of the party,* when motions for new trials are pending, is at the instance of the party who has obtained the verdict, and is for his benefit; and in granting the liberty the court has the right to reserve to the other party the privilege to make his *motion* for a new trial.

A *bona fide acceptor* of an accommodation draft for the benefit of the drawer, is *not estopped from setting up usury,* where the drawer represented to the plaintiff (a third person) that the draft was *business paper.*

*New York General Term, June,* 1861.

*Before* CLERKE, P. J., SUTHERLAND *and* INGRAHAM, *Justices.*

MOTION for a new trial on a case and exceptions.

By the court, CLERKE, P. J.   I. With regard to the motion to dismiss the appeal from the judgments, the question, whether the service of a copy of the case and exceptions is equivalent to a formal notice of appeal, is no longer an open question in this court. The case of *Sherman* agt. *Wells,* (14 *How. Pr. R.,*) expressly decides that it is.   In

that case, as in this, it does not appear that any copy of the case and exceptions, or any notice whatever, had been served on the clerk.

II. Sections 264 and 265 of the Code prescribe and regulate the practice relative to motions for new trials. Such motions are evidently restricted to cases in which verdicts have been rendered in trials before juries. The chapter (3d, *title* 8,) in which these sections are contained, is headed "Trial by Jury," and all its provisions apply only to that form of trial. The directions prescribed by these sections are aimed at the verdict, and contemplate that the motion for a new trial must be made before the entry of the judgment, either before the judge who has presided at the trial, or at a special term. After the entry of judgment the only manner in which the proceedings can be reviewed is by an appeal to the general term. But when the judgment is allowed to be entered by an order of a judge, or the court, for the better security of the party in whose favor the verdict was rendered, the right may be reserved to the other party to make his motion for a new trial. The liberty to enter up judgment, when motions for new trials are pending, is at the instance of the party who has obtained the verdict, and is for his benefit; and, in granting the liberty, the court has the right to annex this condition to it. But in the present case I cannot find that the judgments were entered up merely as security, or that the court, or a judge, made any directions in regard to them; they were entered in the ordinary way, without any stipulation or order that the right to move for a new trial should be reserved. I think, therefore, that the decision of the special term on this point was correct.

III. As the defendants, however, are not debarred from being heard on the exceptions at the general term, as we have decided in the first part of this opinion, I shall proceed to examine the question presented by those exceptions.

The actions were founded each on a draft for $491.31,

dated September 3d, 1857, drawn by John Meads, Jr., on the defendants, Fassitt & Washburn, one payable three months, the other four months, after date, to the order of Meads, accepted by Fassitt & Washburn. They were given in renewal of a draft for $963, dated February 17th, 1857, also drawn by Meads on Fassitt & Washburn, and accepted by them. Meads made the draft for the purpose of raising money for himself, and it was accepted by Fassitt & Washburn solely for his accommodation. On the application of Meads the plaintiff discounted this original draft at a rate exceeding legal interest. The plaintiff held it until maturity, when the drafts in suit were given as a substitute.

The plaintiff gave evidence tending to show that at the time he took the original draft, Meads, the drawer, represented to him that it was regular business paper, valid in his hands, and that he, the plaintiff, bought it, relying upon such representations.

The court charged the jury that, if they "believed that the drawer represented to the plaintiff that the bill was drawn and accepted in the ordinary course of business, and was business paper, valid in his hands, and that the plaintiff, in good faith, acted upon such representations, and bought the paper relying upon such representations, then Fassitt & Washburn, defendants, were bound by them, and estopped from setting up usury in defence."

To this part of the charge the defendants excepted, and asked the court to charge, "that if the jury should find, from the evidence, that the original draft was negotiated for the first time to the plaintiff, and discounted at a rate exceeding lawful interest, and the draft in suit was given in renewal thereof, and for no other consideration, it was usurious and void; and these defendants could avail themselves of this defence, notwithstanding any representations."

The court declined thus to charge, and defendants' counsel excepted.

It has been settled in this district, at general term, that

a party to accommodation paper, who sells it as business paper at a usurious discount, is estopped from setting up usury as a defence. It is not necessary or proper to consider the reasoning and principles upon which this decision was founded. Although I took no part in it, I shall, of course, deem it obligatory upon all the members of the court. The question in the present case extends further, and is, where the indorser of a promissory note, or the acceptor of a bill or draft, gives it to the maker or drawer merely to enable him to raise money on it without any directions or instructions, is he bound by the representations of the maker or drawer that it is business paper? Does the mere fact that the indorser or acceptor has given this accommodation paper to his friend, imply an authority to make those representations? It is urged by the plaintiffs' counsel that the defendants, by giving this paper to Meads, put it into his power to deceive the plaintiff, and, consequently, that they should be bound by them. Undoubtedly, if one person puts another in a position where the inevitable or even probable result is to deceive others by false representations, they may very justly and properly be taken as true against the former. But can this apply to the act of giving accommodation paper to another? There is nothing whatever in the case to show that the defendants had any reason even to suspect that the proceeds of the draft were to be raised by an usurious agreement. The commission of usury is in the lender an indictable offence; and it can never be presumed of any man that he intended any participation in a crime, or that he encouraged others to perpetrate it. It would be extending the doctrine of implied agency rather too far, that, in all cases, where one places an instrument in the hands of another, which is capable of being employed in effecting a wrong, but quite as capable of being legally employed, that the former should be held responsible for the illegal employment of it. To have this effect, I should think something more than infer-

ence or presumption ought to be shown. The presumption should be rather the other way—that the defendants supposed the money was to be legally raised. Banks and private individuals frequently discount paper at legal interest, and are very glad when money is abundant to get seven per cent for it; and a creditor very often readily accepts accommodation paper as security for his debt, without requiring anything more for forbearance than legal interest. Why should we then presume the defendants were aware that this money was to be obtained by usury? And to imply any authority to Meads to make these representations, it should, at least, be shown they were aware of this. As I have already said, there is not a particle of evidence to show that they ever suspected any such intention.

I think, therefore, the judge at the trial erred in charging the jury that if the jury believed the drawer represented to the plaintiff that the bill was drawn and accepted in the ordinary course of business, and was business paper valid in his hands, and that the plaintiff in good faith acted upon such representations, and bought the paper relying upon these statements, then Fassitt & Washburn were bound by them, and estopped from setting up the usury in defence.

The judgment should be reversed, with costs.