LYMAN EASTMAN, Appellant, *v.* ARCHIBALD M. SHAW, Respondent.

Where a promissory note is sold by the payee at a discount greater than lawful interest, the question whether, in view of the usury law, it had an inception prior to the sale, depends upon the question whether it was a perfect and available instrument in the hands of the payee, so that he could maintain an action thereon.

If it was executed without a consideration, or if not assented to and delivered as evidence of a contract, it has no inception until the sale, and the transaction is usurious.

Defendant, by means of fraudulent representations made to him that a company was about being formed to purchase an interest in a valuable patent right, was induced to agree to take an interest in such company. He executed his promissory note for the amount he was to contribute as a member of the company, which he put into the hands of the payee, to show to others as evidence that he was willing to take a share. No company was formed, and the note was sold by the payee before maturity at a discount greater than lawful interest. In an action upon the note, *held,* that it had no inception until the sale, and was usurious and void.

(Argued May 10, 1875; decided June term, 1875.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department setting aside a verdict in favor of plaintiff, and granting a new trial.

This action was brought upon a promissory note made by the defendant for the payment of $200 to L. Weld or bearer, in one year after date, with interest.

The note bore date May 13, 1867. There was an indorsement of fifty dollars made upon the note at the time of its execution. Two or three days after its date, the note was sold to John Benedict for $115. Near the close of March,

and before its maturity, it was sold by Benedict to Eastman, the plaintiff, for $150.

The defence to the note, among other things, was usury.

It was claimed by defendant, and his evidence tended to show, that two persons (Seymour and Elliott) called on the defendant, a farmer in Tompkins county, representing that one Weld was the owner of a patent right for a useful and valuable farming implement (a hay rake and tedder) which they were engaged in selling, as Weld's agent. It was stated by them that they were trying to get up a company of ten persons, and proposed to sell to them the right for Tompkins county. The price was $2,000. This was to be paid by each of the ten persons giving his note for $200. The notes were not to be sold, but held for one year. Machines were to be manufactured at Binghamton, and could be supplied to the company for thirty-five dollars each, and readily sold to the farmers for eighty dollars. It was further represented, that if any member of the company did not realize from the sales of the year enough profits to pay his note, the note was to be given up and his share taken back, free of charge. There was to be a binding writing given to this effect to each member of the company, as soon as it was complete, and the right was conveyed to it, together with a certificate of his ownership of his share. Under these representations, the defendant said that "he did not know but he would take a share." Seymour and Elliott then wanted him to sign the note he was to give, and let them take it, "merely to show to others that he was willing to take a share." They said that the note need not be stamped, and that it would then be worthless." They also said that they would do better by *him* than they had at first proposed — indorsing on the note fifty dollars, thus reducing it to $150, and that they would let him take the paper he was to receive to show to any lawyer. The "note" in controversy was, upon these terms, signed and handed over by the defendant to Seymour and Elliott. He received at the same time the certificate of membership, with the name of L. Weld printed upon it. Appended to this

document was an undertaking, signed by Elliott, to take back the defendant's share, free of charge, in case the stipulated profits were not realized within the year. The defendant claimed that this entire transaction was a fraud gotten up by Seymour and Elliott, acting in concert with Weld and one Boyce ; that none of their implements had ever been manufactured in Binghamton or Owego, and that none of them had ever been in use in Broome or Tioga county, or elsewhere.

The defendant, having taken " legal advice," sought for the parties, and finding only Seymour and Boyce, declared that he repudiated the transaction, and demanded back his " note or paper." This was refused. He also endeavored, by communicating with the revenue collector, to prevent the note from being stamped. It was, however, stamped, and negotiated to Benedict, and the proceeds were divided among the confederates. The company was never gotten up, nor was any conveyance of the right to the patent for Tompkins county made to the proposed company.

On this state of facts, the counsel for the defendant asked the judge to submit the case to the jury upon the questions whether there had been any delivery of the note in suit made by the defendant to the payee therein named, or to any other person or persons, and whether the note did not have its first inception in the sale to Benedict for $115. He also asked for instructions, that if the jury found that the note did have its first inception in the sale to Benedict, then the sale and purchase for $115, was usurious and void, and the verdict should be for the defendant. These requests were refused, and defendant's counsel duly excepted. The judge held, that though the note had been obtained by fraud and deceit for a pretended consideration that had failed, and that though the payee could not himself have recovered on the note against the defendant, yet that the plaintiff was a *bona fide* holder for full value and could recover. He thereupon directed a verdict for the amount of the note, with interest, to which said counsel also duly excepted. Further facts appear in the opinion.

*Amasa J. Parker* for the appellant. Plaintiff's rights were not prejudiced by any alleged fraud between the maker and the payee. (Story on Prom. Notes [2d ed.], 217; 3 Kent's Com. [9th ed.], 78.) The omission to stamp the note did not invalidate it. (*Moore* v. *Moore*, 47 N. Y., 467.) As against plaintiff no parol agreement making the execution or delivery of the note conditional could prevail, or the fact that there had been a wrongful diversion of it. (*Vallett* v. *Parker*, 6 Wend., 620; *Bk. of Albion* v. *Smith*, 27 Barb., 489; *Payne* v. *Ladue*, 1 Hill, 116; *Small* v. *Smith*, 1 Den., 583; *Brown* v. *Hull*, id., 400; *Ross* v. *Bedell*, 5 Duer, 462; *Steinhart* v. *Broker*, 34 Barb., 436; *Gould* v. *Sigee*, 5 Duer, 260, 270; *Stalker* v. *McDonald*, 6 Hill, 93; *Farrington* v. *Frankfort Bk.*, 24 Barb., 554; 31 id., 183; *Davis* v. *McCready*, 17 N. Y., 232; *Vallett* v. *Parker*, 6 Wend., 620; *Whitney* v. *Snyder*, 2 Lans., 478; *Lewis* v. *Jones*, 7 Bosw., 366, 370; *Gridley* v. *Dole*, 4 N. Y., 486; *Magee* v. *Badger*, 34 id., 247; 4 Alb. L. J., No. 5.) Plaintiff being a *bona fide* purchaser for value before due, it was no defence to show that the original delivery was conditional, or for a specific purpose. (*Benton* v. *Martin*, 52 N. Y., 570; *Redlich* v. *Doll*, 54 id., 234; *Park Bk.* v. *Watson*, 42 id., 490; *Welch* v. *Sage*, 47 id., 143; *Seybel* v. *Nat. Cur. Bk.*, 54 id., 301; *Harger* v. *Wilson*, 63 Barb., 237; *Dutchess Co.* v. *Hachfield*, 1 Hun., 75.)

*M. Goodrich* for the respondent. The note had no inception until it was sold by the payee, and having been sold by him for less than its face value, it became usurious and void. (*Powell* v. *Waters*, 8 Cow., 669; *Dowe* v. *Schutt*, 2 Den., 621; *Abey* v. *Rapelye*, 1 Hill, 1; *Williams* v. *Storms*, 2 Duer, 52; *Bosrange* v. *Ross*, 29 Barb., 576; *White* v. *Stillman*, 25 N. Y., 541; *Clark* v. *Sisson*, 22 id., 312; *Catlin* v. *Gunter*, 11 id., 368; *Hall* v. *Earnest*, 36 Barb., 585; *Hall* v. *Wilson*, 16 id., 548; *Vallett* v. *Parker*, 6 Wend., 615; 1 Pars. on Bills, 52; *Marvin* v. *McCullum*, 20 J. R., 288; *Smith's Exrs.* v. *Wyckoff*, 3 Sandf. Ch., 77; *Keutzen* v. *Parks*, 2 Sandf. S. C. R., 60.)

DWIGHT, C. It cannot be disputed that if the note in litigation had been sold before maturity to a holder *for full value*, in good faith and in the usual course of business, none of the matters set up in the answer or proved at the trial would have been of any avail to prevent a recovery. Whether the defendant intended to deliver the note or not, or did in fact do so, would have been wholly immaterial. The paper in the similitude of a note had been put in the hands of Seymour and Elliott, for a purpose. If they violated instructions, and passed the paper to an honest holder, it was but an instance of the familiar rule that when one of two innocent persons must suffer, that one must sustain the loss, who has enabled the wrong-doer to commit the wrong. Most of the cases cited by the defendant are explained by these considerations, which have a peculiarly forcible application in their relations to negotiable paper.

The present case, however, has nothing to do with this class of questions. The sole point of inquiry is, whether there has *been a violation of the usury laws.* That can only be disposed of by a consideration of the rules governing the taking of *unlawful* interest, which are in no respect peculiar to negotiable paper. The same question might arise as to a bond and mortgage. Of course, when such instruments have their inception, it is not usurious for the holder to sell them for what they will bring. On the other hand, if they are transferred at a discount beyond seven per cent, not yet in a legal sense having had their inception, the transaction is usurious. It accordingly tends to confusion to consider the present case at all as a question arising under the law of negotiable paper. The sole stress of the present question is this: Has the payee of this note transgressed a statutory rule preventing the taking of unlawful interest, and which, if violated, infects the note, takes it out of the class of commercial instruments and makes it invalid and worthless in the hands of an innocent holder?

Did, then, the present note have its "inception" in view of the usury laws, when the so-called transfer of it was made to Benedict? If void in his hands it needs no argument to

show that it cannot be collected by the plaintiff. The question whether the note was void in Benedict's hands for usury, depends upon the point whether it had its "inception" before it was transferred to him by the payee. This depends upon the point whether the latter could have brought an action upon it against the defendant. The inquiry is not, as has been sometimes suggested, whether the note is accommodation paper, but it is the more broad proposition whether an action could have been maintained upon it before transfer. (*Munn* v. *Commission Co.*, 15 J. R., 44; *Powell* v. *Waters*, 8 Cowen, 669; *Kent* v. *Walton*, 7 Wend., 256.) In the first of these cases SPENCER, J., said: "On a careful examination of the case, we see no reason to doubt that the .bill, while in the payee's hands, and before it was discounted by the plaintiffs at a higher rate than the legal interest, was a perfect and available bill, and that when it became due he could have maintained an action upon it against the acceptor or drawer. This appears to the court to be the true test in distinguishing between a case where a discount of a bill at a higher rate of premium than the legal rate of interest, will render the transaction legal, by considering it the purchase of a bill already perfect and available to the party holding it, and where it will be illegal as a usurious loan of money." (P. 55.) In *Powell* v. *Waters* the rule is stated in this form: "A note which has been negotiated by the maker and might, if at maturity, be enforced against him by the holder, may be sold at a greater discount than the rate of seven per cent per annum, without involving the purchaser in the penalties of usury. But the note must be perfect and available to the holder to make it salable by him. The test is the right to maintain an action upon it, against the parties to it, if it was then due." (Pp. 685, 686. See, also, 2 Parsons on Bills and Notes, 426.) This author says, in discussing this subject: "Hence we may draw one rule: If no party to the note, who is prior to the holder, could himself bring an action upon it against the maker, then no prior party ever owned the note, and the holder being the first owner, must be held to have loaned the money to the

maker, through the prior parties, who were only agents of the maker; on the other hand, if any prior party could have maintained the action, he owned the note and sold it to the holder."

These authorities serve to show that the rule that a note must have had an *inception*, to make it the subject of sale, is not confined to the case of accommodation paper, but extends to all cases where the paper, though in the similitude of a note, has no existence as between the immediate parties to it. This point is well shown by the case of *Marvin* v. *McCullum* (20 J. R., 288). In that case it appeared that a note made payable to A., or bearer, was never delivered to A., but was passed by the maker to H., as security for a usurious loan. The court held that the mere act of signing a note and retaining it in the hands of the drawer formed no contract; that, before the instrument became a note, there must be a delivery, as an evidence of a contract. On this ground, it appears to me that the case of *Hall* v. *Wilson* (16 Barb., 548), was correctly decided. In that case W. had made a promissory note for $120, payable to U., or bearer; it was never delivered, but was placed by the maker in his desk, as a place of deposit, where it was stolen by B., a laborer in his employ, and was by him transferred to one Bigelow, at a usurious discount. It was held that the plaintiff, who derived his title from Bigelow, could not recover. The court, per W. F. ALLEN, J., took the ground that the note never had a legal inception, for want of a delivery, that being essential to its very existence. It, accordingly, could not be the subject of sale, but only of discount; and if a larger sum than the regular rate of interest was deducted, then the transaction was usurious.

It only remains to apply these principles to the case at bar. The note, in order to have been the subject of sale by Seymour or his principal, Weld, must have had all the elements of a contract — parties, consideration, assent and subject-matter. I do not think that there was any consideration for the note. The defendant was to have the one-tenth share of the

right to the patent for Tompkins county, to be conveyed to the company when formed. A fair test of the point whether he received any consideration is to inquire whether, if the transaction had been an honest one and favorable to himself, he could have compelled Weld to convey one-tenth of the right for that county to him? Manifestly not. He would only be contemplated as having a share in the company, if formed. If the plan became abortive nothing would pass. The whole transaction, at the time Seymour and confederate left the defendant, must be regarded as inchoate and provisional and dependent upon the fact of securing nine other men to unite with him. The certificate must be considered as given simply to carry out provisionally the intent of the contract. If the defendant could not have held Weld to the contract in its incomplete condition, it is plain that, under the rules of mutuality, the latter could not have held the defendant.

There is a still more serious difficulty in the case. There was plain and distinct evidence given by the defendant that there was no intent on his part to deliver the note to Seymour and Elliott, and that there was no delivery in fact. If this were true there was no assent, and of course no contract. The minds of the parties never met upon the subject-matter of the contract. The defendant testified without contradiction that they told him that they only wanted the note to show to others that he was one that was willing to go in and make up the company of ten men, and that they gave him the certificate of membership, etc., simply to show to counsel to see that they would be all right; to see that there was to be no deception. He further said: "In answering that the note I gave Seymour and Elliott was for the certificate of membership, I did not mean that I then gave and delivered the note for that purpose. It was drawn for the price of the certificate of membership, but the note was not then delivered to them, nor the other papers mentioned to me, for any other purpose except to be shown to others as I have stated."

If this testimony is to be believed, the case clearly falls within the authorities and principles already considered. The

note had no inception in the hands of Weld. I lay entirely out of view the testimony of Seymour, that he bought the note for his services to Weld and sold it to Benedict. He was a co-conspirator in the vile fraud practiced on the defendant, and could, on general principles of justice, no more have maintained an action on the note than Weld himself. The note had no inception until it reached the hands of Benedict. The difficulty with his claim is that he took the note at a usurious discount, and the plaintiff has no greater rights than Benedict.

It cannot be urged that this was no loan by Benedict, because no loan was intended. The answer is, that the law stamps the transaction with the characteristics of a loan. The same thing might be urged when one discounts an accommodation note at a greater discount than seven per cent, not knowing its true character, but supposing it to be a business note. It is perfectly well settled, that this want of knowledge has no effect. The holder is bound to know the character of the paper he is dealing in, and if it turns out to be accommodation paper, the transaction is usurious. (*Clark* v. *Sisson*, 22 N. Y., 312; *Dowe* v. *Schutt*, 2 Denio, 621; *Newell* v. *Doty*, 33 N. Y., 83; *Jackson* v. *Fassett*, 12 Abb. Pr., 281; S. C., 33 Barb., 645.) The present case only requires a wider generalization based on a similar principle, and one who takes a note at its inception at a greater discount than the legal rate, must be conclusively presumed to have intended to loan, as the transaction can have no other character. His want of knowledge that the note takes its inception in his hands is immaterial.

It is not necessary, in reaching this conclusion, to disagree with such cases as *Howe* v. *Potter* (61 Barb., 356) and *Harger* v. *Wilson* (63 id., 237). In each of those cases, the transaction had all the elements of a contract. In *Harger* v. *Wilson* the maker of the note intentionally issued the note and put it in circulation, though induced to do so by the fraud of the payee. Here was a valid contract, though in its nature defeasible. The payee could have brought an action

on the note, though the fraud might have been urged as a defence. It was properly held, that the note had an inception in the hands of the payee. Such a case is plainly no authority for the decision of one where the defence is, that the note never took effect at all, because there was no intent to deliver and in fact no delivery.

The learned judge at the Circuit having refused to comply with the defendant's request to submit the question of his intent to deliver the note to the jury, and having charged, as matter of law, that the plaintiff could recover, the order granting a new trial was correctly made and must be affirmed.

Order affirmed and judgment absolute to be entered for the defendant, with costs.

All concur.

Order affirmed and judgment accordingly.