JAMES A. WEBB, Respondent, *v.* JOHN T. PRYER, Impleaded, etc., Appellant.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Usury.*—Where a person indorses a note for the accommodation of the maker, and it is sold at a greater rate of discount than the sum of six per cent. for the maker's benefit, the note is usurious.

2. *Same.*—Where, in order to sustain the defense of usury, it is necessary to prove that the note was indorsed by defendant for the accommodation of the maker, but no evidence directly or indirectly tending to establish this fact was given beyond the answer of the maker of the note that it never had any validity before it went into the broker's hands, which was controverted by his certificate that it was a genuine business note, and that there was no defense to the same, either in law or equity, the probabilities of the case are suffi-

ciently against the defense to justify the court in holding that the note was a legal obligation against the indorser.

3. *Evidence. Certificate.*—Though a certificate of the maker of a note that it is genuine business paper, is not effectual as a representation against the indorser, yet it is evidence directly affecting the credibility of adverse evidence given by the maker as a witness upon the trial.

4. *Appeal. Requests to direct verdict.*—Where each party at the close of the evidence, requests the court to direct a verdict in his favor, it places the disposition of the case upon the law applicable to the facts as the evidence tends to establish them.

Appeal from a judgment entered upon a verdict directed by the court, and from an order denying a motion for a new trial.

*Albert Stickney* for appellant.

*William Erdman,* for respondent.

DANIELS, J.—The verdict was recovered against the defendant as the indorser of a promissory note, made by the other defendant, Charles R. Braine. This note was dated on the 7th of March, 1888, and the maker thereby promised to pay to the order of himself, the sum of $1,500 in four months after its date, for value received. He indorsed the note to the defendant John T. Pryer, who himself endorsed it, and it was after that placed in the hands of the young Mr. Braine, who delivered it to the witness Theodorus B. Taylor, to be sold by him. He sold it to the plaintiff, wh ) paid for it the sum of $1,445. This payment was made by check payable to Taylor, the broker, who was employed to, and did, sell the note. And Taylor afterwards made and delivered this check to the defendant Pryer for the sum of $1,400 for the note. Pryer indorsed this check to the defendant Charles R. Braine, the maker of the note, who deposited it in the Tradesmen's National Bank.

At the close of the evidence each party requested the court to direct a verdict in his favor, thereby placing the

disposition of the case upon the law applicable to the facts as the evidence tended to establish them. Provost *v.* Mc-Encroe, 102 N. Y. 650. And the court directed a verdict for the amount of the note in favor of the plaintiff.

This direction has been resisted as erroneous on the ground that the indorser indorsed the note for the accommodation of the maker, and it was sold at a greater rate of discount for his benefit, than the sum of six per cent. And if the proof established these to be the facts, then the note was usurious within the decisions made in Eastman *v.* Shaw, 65 N. Y. 522, and Tiedemann *v.* Ackerman, 16 Hun, 307.

But the evidence upon the trial failed to prove the fact to be that the appealing defendant indorsed the note for the benefit, or accommodation of the maker. The note itself was in conflict with this theory, for it is stated to have been made for value received. And when the witness Taylor was requested by young Mr. Braine to sell the note, the former inquired of the latter if it was a good note, and would be paid at maturity. And he said, " yes, "

An inquiry was then added, as to the terms for which the note might be sold, and he was informed that the price was $1,400; that the witness could take out $100 to cover commissions, etc. And that he stated he did in making a disposition of the note. The only evidence given upon the trial, as proof that the note was not made upon a valuable consideration, was that given by the maker himself. But he did not testify that such was the fact. What he said was, that " the note had never been discounted before it went into Mr. Taylor's hands. It never had any validity in any shape until it went into his hands." This last answer, which is the only proof from which it could be claimed, by any possibility, that the note was indorsed for the benefit or accommodation of the maker, fell very far short of proving that fact. The witness did not so state the fact to be, but what he said was, that the note previously had no validity. And that was no more than the merest opinion of the witness

himself. It had no tendency whatever to prove that the note had been made and delivered without an actual consideration passing from the indorser to the maker. But if the evidence could be construed as having a tendency to prove that fact, its effect was very greatly reduced by the circumstance which was proved in the case, that the maker of the note before the sale of it to the plaintiff, made and subscribed a certificate stating that it was " a genuine business note, given for value received, and that there is no defense to the same, either in law or equity." This certificate was exhibited to the plaintiff at or before the time when the note was purchased by him.

It was not, however, effectual as a representation against the indorser, but it was evidence directly affecting the credibility of the evidence given by the maker as a witness upon the trial. For it was directly opposed to the statement made by him, that the note never had any validity until it went into Mr. Taylor's hands. In this state of the evidence, a jury would have been at liberty to infer that the note had been made and delivered to the indorser for a valuable consideration, and that the latter had passed it over to the young Mr. Braine to procure it to be sold, and the. money obtained upon it. And the soundness of such a presumption would be in no manner affected by the testimony of the indorser who was sworn as a witness in his behalf. For he did not testify that the note had not been made and delivered to him for a valuable consideration passing between himself and the maker. What he did say was that he had received nothing for the note before the check was delivered to him by Taylor, the broker. And that the note had not been discounted or transferred in any shape before it was sent to Mr. Taylor as far as he knew. This evidence, like that of the maker himself, was singularly deficient in its reference to the transaction between the maker and himself, through which he received this note.

To sustain the defense which was made, it was necessary

that proof should have been given that the note was indorsed by Pryer for the accommodation of the maker. But no evidence directly or indirectly tending to establish that fact was given, beyond the answer of the maker of the note which has already been mentioned. The probabilities of the case, as the evidence disclosed it, were sufficiently against the defense to justify the court in holding, as it did, that the note was a legal obligation against this indorser. And as both parties presented the case as dependent only upon legal rulings, and neither required any question in it to be submitted to the jury, the court was supported by the evidence in drawing the inferences upon which the direction was given for a verdict in favor of the plaintiff. The judgment should be affirmed.

VAN BRUNT, Ch. J. concurs.

BRADY, J.—The note, of which this action was predicate, was indorsed by the appellant for the accommodation of the maker, and for the purpose of procuring money. The co-defendant, the maker, gave a certificate that it was a business note, and submitting to the judgment properly rendered therefor against him, does not appeal. The appellant gave no certificate, and made no statement personally in regard to the note. He merely sent it on its way by indorsement.

The person, however, to whom the note was confided for sale or discount, stated to the broker employed that the note was a business note, and was informed by the broker that if he could sell it, he would pay him the check, but only to the order of the indorser. The reason for this method was not stated by the broker, but it may well be presumed that it was because the indorser had neither written nor spoken of the validity of the note. The check given in payment of the sum accepted for it was made by the broker, payable to the order of the indorser, and by him indorsed, payable to the order of the maker, and again for deposit by the indorser.

19

It is as follows:

NEW YORK, *April* 13, 1886.

Leather Manufacturers' National Bank: Pay to the order of J. T. Pryer, fourteen hundred dollars ($1400).

THOS. B. TAYLOR.

Indorsed:
Pay to the order of Charles R. Braine,

JOHN T. PRYER,

CHAS. R. BRAINE.

For deposit in Tradesmen's National Bank.

It is not necessary to consider whether the note was discounted at a usurious rate, and would be invalid under ordinary circumstances, inasmuch as the indorser must be held responsible for the statement made that it was a business note. The sale was evidently made on the credit of the indorser and he was advised of that by the form of the check.

He was also thus advised that he was regarded as the first or chief person in the transaction, and notified that he would be sought for payment of it if any default was made by the maker. And it will readily occur to whoever examines this case, that it was through his instrumentality that the maker received the money, the check having been made payable to his order and indorsed by him over to the maker. This incident was sufficient to put him upon inquiry, if he desired to disavow liability, to ascertain whether any representations had been made affecting him and why it was that the check was made payable to him and not to the maker. He cannot assert, under such circumstances, that degree of ignorance which might, under other circumstances, relieve him from an unauthorized act done by his agent, and that some one was acting as such was apparent from the form of the check. These facts and circumstances demanded the application of the just rule clearly stated in

Smith *v.* Tracy (36 N. Y. 79), that when a party takes the benefit of a loan or purchase obtained on his credit, he will not be permitted to retain the fruits of a transaction infected with fraud, whether the deceit which he seeks to turn to his profit was practiced by him or his accredited agent. · See, also, Elwell *v.* Chamberlin, 31 N. Y. 611; Cards *v.* Hunter, 18 Id. 389.

And the rule is the same when the person assumes to act for another, and without any authority, if the money be received for the act done, which is thus ratified, and the means adopted by which money was obtained. This disposes of the only question in the appeal involved which requires consideration.

The case of Lewis *v.* Barton, 106 N. Y. 70, on which it is said by the respondent the appellant relied on the motion to dismiss, was no analogy to this. There the certificate was held not to be an estoppel, because the holder knew that the note was an accommodation, and, therefore, that the certificate was false.

The judgment should be affirmed, with costs.