THE GERMANIA SAVINGS BANK, Kings County, Appellant, *v.* THE VILLAGE OF SUSPENSION BRIDGE in the State of New York, Respondent.

*Stolen bonds of a village — bona fide purchaser — delivery — negligence of a village board — " issue " defined.*

Delivery is essential to the validity of all written instruments, including promissory notes, bills of exchange and bonds  Before such an instrument can be operative there must be a delivery as evidence of a subsisting debt, and until such delivery the paper has no legal inception and is inoperative.

Certain bonds of a village were lithographed, signed and sealed, but were never delivered, or intended to be delivered, for sale; some of them were, however, illegally pledged by a village board issuing them, but subsequently were returned to the board and were directed by it to be destroyed.  Thereafter the bonds were stolen from the custody of the board, were sold without its authority, consent or knowledge, and passed into the hands of a *bona fide* purchaser for value.

*Held,* that the bonds so stolen never had a valid inception, and were inoperative;

That it was immaterial whether or not the members of the board were careless or negligent in failing to insure the destruction of the bonds;

That the bonds of a village can only impose liability upon such village in the manner prescribed by the law which authorizes their issue;

That the term "issue," as applied to negotiable paper, means its delivery for use and circulation.

APPEAL by the plaintiff, the Germania Savings Bank, Kings County, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 3d day of February, 1893, upon a decision of the court rendered after a trial at the Kings County Special Term dismissing the plaintiff's complaint upon the merits and for costs.

*W. D. Veeder* and *Tracy C. Becker,* for the appellant.

*W. E. Willey,* for the respondent.

DYKMAN, J.:

This is an appeal from a judgment dismissing the complaint of the plaintiff, with costs, entered upon the decision of a judge after a trial at Special Term.

The action was for the recovery of interest upon certain bonds of the defendant, and the defense was that the bonds from which the interest coupons were cut were never issued, and never had any inception as such, but were stolen and put upon the market feloniously. The trial judge, after finding the fact of the incorporation of the plaintiff, and that the defendant was a municipal corporation, and that the board of water commissioners of the defendant was a board legally constituted under the provisions of the statute in relation to the organization of water companies to furnish pure and wholesome water to the inhabitants of villages, made the following specific findings:

"*Fourth.* The said board of water commissioners caused to be lithographed, signed and sealed the four bonds upon which this action is brought, and which bonds were numbered respectively, 234, 235, 236 and 237, and were each of the denomination of $500, with interest payable semi-annually at the rate of four per cent per annum; that said bonds were never delivered, or intended to be delivered, by the said board of water commissioners for sale.

" That said board of water commissioners, after the lithographing, signing and sealing of said bonds as aforesaid, directed the same to be destroyed, and believing the same had been destroyed thereafter, caused to be issued bonds of the same denomination and number, but having a larger rate of interest, which said last-mentioned bonds were issued and sold by said board of water commissioners in the place and stead of said bonds upon which this action is brought.

" *Fifth.* That said bonds, numbered 234, 235, 236 and 237, upon which this action is brought, were stolen and feloniously abstracted from the custody of said board of water commissioners, and were sold without the authority and consent, knowledge or intention of said board to have the same delivered or sold, and no part of the proceeds thereof were received by, or came into the possession of said board of water commissioners, or of the defendant, nor were said bonds negotiated or sold in the name of said board of water commissioners or of the defendant in this action.

" *Sixth.* That said bonds upon which this action was brought were never delivered or intended to be delivered by said board of water commissioners for sale ; but the same were stolen and negotiated without the knowledge, permission or consent of the said board of water commissioners or of the defendant.

" *Seventh.* The plaintiff is a *bona fide* purchaser for value of the bonds upon which the action is brought."

As conclusions of law the judge decided : *First*, that the defendant is not liable upon said bonds, numbered 234, 235, 236 and 237, set forth and described in the complaint herein, and directed judgment accordingly for the defendant against the plaintiff for a dismissal of the complaint upon the merits, with costs.

It may be stated as a general proposition of law that delivery is essential to the validity of all written instruments. Promissory notes, bills of exchange and bonds are all included in that general rule of law. The mere act of signing a note or bond, and retaining it in the hands of the maker, forms no contract. Before the instrument can be operative there must be a delivery as an evidence of a subsisting debt, and until such delivery the paper has no legal inception and is inoperative. (*Marvin* v. *McCullum*, 20 Johns. 288 ; *Hall* v. *Wilson*, 16 Barb. 548 ; *Eastman* v. *Shaw*, 65 N. Y. 528.)

The foregoing principle applied to this case seems to be decisive of the appeal.

These bonds never had a valid inception. They were stolen before delivery, and so were destitute of that essential element of validity; they were neither property nor the subject of ownership. It is a general principle in the law of contracts that no valid obligation can be created by the perpetration of a wrong or a felony. There is an exception to this rule in favor of commercial paper by which a holder of negotiable paper may, under certain circumstances, recover upon it, notwithstanding any infirmity in the title of the person from whom he derived it, but that presupposes a case where the maker had voluntarily parted with the instrument, and it had a valid inception.

In this case the decision is placed upon the absolute invalidity of the bonds for want of delivery. The defendant here has not voluntarily placed a paper where it could be used in a wrongful manner. They had no more validity than the undelivered note of an individual. (*Codington* v. *Gilbert*, 17 N. Y. 489.)

The distinction is between paper which never was delivered and never had any legal beginning or binding force, and instruments which have been valid and have been delivered.

In the first case, the instrument has no binding force, and imposes no liability; it never was an operative contract, because it had not been delivered to any person as evidence of a subsisting debt. It never was a subsisting security, and had no pre-existing value. It was in the similitude of a legal obligation, but no holder of it was ever entitled to maintain an action upon it if it had been due.

In the second case, the first honest holder could maintain an action upon the paper if it was due, and so may any subsequent *bona fide* holder sue upon it, even though it came to him through a thief.

The underlying principle is obvious. In the second case the paper at one time imposed liability, and in the first case it never did.

A note made to be discounted at an usurious rate of interest, and indorsed for the accommodation of the maker, falls within the first class and is void (*Bennet* v. *Smith*, 15 Johns. 355), and any note or instrument, void as between the parties for usury, is void in the case

of a *bona fide* holder. That is another case where the void note cannot be validated.

In relation to the claim of the plaintiff, that those bonds were all actually issued, it is to be said that the position is untenable. The term "issue" as applied to negotiable paper means its delivery for use and circulation, and in that sense these bonds never were issued.

Three of these bonds, numbered respectively 234, 235 and 236, were delivered to the contractors, who were creditors of the village, under this resolution: "August 11th, 1884. On motion, Phillips & Young were allowed two thousand ($2,000) in bonds, to be redeemed by the board on Jan. 1st, 1885, at four per cent." The three bonds were then delivered to Phillips & Young in pursuance of this resolution and used by them as collateral security and redeemed by the board, and redelivered to it in January, 1885, and Houran, the treasurer, was directed to destroy them. Instead of obeying that direction he sold them. There was no agreement that Phillips & Young should take the bonds in payment of their indebtedness, and the board had no authority to deliver the same to them for any other purpose.

By the statute under which these bonds were issued the commissioners were clothed with authority to borrow money and execute bonds to secure the payment thereof, but the money so borrowed was directed to be appropriated to supplying the village with water, and, of course, could be used in no other manner. (Laws of 1875, chap. 181, § 8.)

Phillips & Young, therefore, never had any title to the bonds so delivered to them. The other bond, No. 237, never was delivered to any one by the board. We have, therefore, disposed of the case under the theory that these bonds never were issued.

It is unnecessary to inquire or determine whether the members of the board of water commissioners were careless or negligent in failing to insure the destruction of the bonds in question, because the defendant cannot be charged with liability upon that ground; they could only impose liability upon the defendant in the manner prescribed by the law which created them. (*Horton* v. *Town of Thompson,* 71 N. Y. 513.)

This remark is not to be taken as an intimation that there was

carelessness, because the board directed the destruction of the bonds and was informed that they had been destroyed.

There were many objections to the introduction of testimony during the trial, but they are mostly frivolous, and none of them present any error.

The judgment should be affirmed, with costs.

BARNARD, P. J., concurred; PRATT, J., not sitting.

Judgment affirmed, with costs.