## CAMPBELL v. NICHOLS AND TOMPKINS.

1. A contract with respect to the interest to be paid under it, is, as a general thing, to be construed and governed by the law of the place in which the parties, in good faith, intend it shall be performed.

2. A note signed in this state, but passed away and coming first into legal existence in New York, is, in contemplation of law, made in the latter jurisdiction ; but such note being by its terms payable in this state, must be regulated, with respect to the law of interest, by the statute of New Jersey.

3. A note, as long as it remains the property of the maker, is not vendible.

4. If a third party take such note at a deduction greater than legal interest, under a deceitful representation, made by the agent of the maker, that it has been put into the market for value in the regular course of business, such a transaction is, in law, a loan of money, and not a sale of the note.

5. Such taker of the paper, on discovering the fraud, can repudiate the transaction, but he cannot allow it to stand, and insist that it is a sale.

6. If an agent, having in his possession a note, the property of the maker, falsely represents that such note has been passed and is already in the market, and a third party, relying on such representation, takes the note for less than its face, the maker thereof, when sued upon it, cannot set up the falsity of the statements of his agent, in order to defeat such action.

Campbell v. Nichols et al.

7. But such evidence is competent to prevent a recovery of any amount beyond the sum which has been lost, by reason of the false representation which occasioned the plaintiff's damage.

8. The doctrine of *estoppel in pais* should not be applied, except to the extent of preventing the party who has been misled from being defeated in a recovery of indemnification.

On verdict for plaintiff, and points reserved by the court.

This was a suit on a promissory note drawn in Newark, in this state, by the defendants, payable to their own order at the Newark City National Bank, and endorsed by them. After its execution, it was delivered in Newark to a Mr. Havell, to procure the money on it for the defendants. Havell took it to New York, and gave it to one Gaulidet, a note broker, to be disposed of, and on returning to Newark he informed one of the defendants of the disposition which he had made of the note. Gaulidet sold the note to a Mr. Kirkland, at a discount of one and a half per cent. a month, representing it had been given for value received, and stock sold and delivered; on which representation Kirkland purchased it. Kirkland afterwards sold the note to the plaintiff in Newark.

The cause was tried before the Essex Circuit, and a verdict taken for the plaintiff, subject to the opinion of this court on the points following:

*First.* Whether the right of the plaintiff to recover on the said note is affected by the usury laws of New York, where the said note was first negotiated.

*Second.* Whether the transaction, as it appears in the evidence, was usurious under the laws of New Jersey.

For plaintiff, *C. Parker* and *J. P. Bradley.*

For defendants, *J. W. Taylor* and *A. S. Hubbell.*

BEASLEY, CHIEF JUSTICE.    The note which forms the subject of this controversy, was put into writing and was

signed in this state, but it was passed away and came first into legal existence in the State of New York ; in contemplation of law, therefore, it was made in this latter jurisdiction. But although thus made in New York it was, by its terms, payable in New Jersey, and consequently, in the absence of an expression of a different intention, is to be regulated, with respect to the law of interest, by the statutes of the latter state. In his commentaries on the *Conflict of Laws*, § 291, Judge Story thus declares the legal doctrine on this subject : " The general rule is that interest is to be paid on contracts according to the law of the place where they are to be performed, in all cases where interest is expressly or impliedly to be paid ;" and in corroboration of this view, a large group of cases is to be found in the note to the passage from which the above quotation is extracted. The rule thus propounded was explicitly approved by this court, in the case of *Healy* v. *Gorman*, 3 *Green* 328, a decision which was rendered in the year 1836, and the ruling of which has never since in this state, so far as I am aware, been judicially called in question. In my opinion, the doctrine is now entirely indisputable, that a contract, with respect to the interest to be paid under it, is, as a general thing, to be construed and governed by the law of that place in which the parties, in good faith, intend it shall be performed. Subjecting the subject of the present action, therefore, to the control of this principle, it follows, that the note in dispute, as far as it may be affected by laws relating to interest, must be adjudged by legal regulations prevailing in this state. According to this standard, the plaintiff will be entitled to recover the sum advanced upon this paper, but he will lose both interest and costs ; such being the effect of the act of 1864, which was in force at the time of the transaction of this business. *Pamph. L.* 1864, *p.* 714.

But a recovery beyond this measure was claimed on the argument by the counsel of the plaintiff, on the ground that the note in question was purchased in good faith, and without any intention, on the part of the purchaser, of making a

loan of money, and that, as a consequence, the transaction could not in its nature be usurious. The vein of reasoning in support of this position, was this : that it is now conceded law, that the holder of a promissory note may sell it, as he may any other property, for such price as he can obtain for it; that if such sale be adopted as a device to cover a usurious loan of money, it will, of course, be amenable to the laws against usury ; but if no such device is intended, it is difficult to see how the transaction can be converted, by operation of law, first into a loan which the parties did not contemplate, and, secondly, into a usurious loan which never entered into their minds. It must be confessed, that this view of the question is strongly maintained by several of the authorities to which counsel referred. *Withworth* v. *Adams*, 5 *Randolph R.* 333 ; *Ranay* v. *Clark*, 4 *Humph.* 244; *Levy* v. *Gantly*, 4 *Dev. & B.* 313 ; *May* v. *Campbell*, 7 *Humph.* 450. But it does not seem to me that the reasoning upon which these cases rest is sound. In my apprehension there is this fundamental and fatal fallacy in it, viz., the intention of the parties is made the test of the nature of the transaction. But, to the reverse of this, I think that if a transaction, in its essence, is simply that one man receives from another a sum of money on his promise to pay that sum back in a given time with interest greater than the law permits, such a transaction, if allowed to stand and be consummated, is, by the invincible force of facts, and in spite of the intention of the parties, not only a loan of money, but a usurious loan. In the case now before us, the money of Mr. Kirkland went directly from him into the hands of the defendants, and they gave for that money their promise to repay it in a specified time, with the addition of interest and a premium. These are the facts of the affair, and the character and qualities of those facts cannot be altered by the circumstance that one of the parties supposed he was doing something of an entirely different kind. The nature of an act which is done, cannot be changed by the intention of the party doing it. In fact, the sum of this present matter is,

that Mr. Kirkland was tricked into making a loan when it was his design to become the purchaser of a note. Now, it is obvious that upon the discovery of the imposition put upon him, it was in his power to repudiate the affair and recover back his money; but the difficulty, which appears to me insuperable, is, to permit him to let the affair stand and insist upon calling it a purchase of a note, which, in point of fact, it was impossible in the nature of things for it to be, on the ground that he thought it such at the time of the occurrence. It is certain there was and could be no sale of this note, for there was no subject of a sale, as the note of the defendants, while it belonged to them, was not, in law, vendible. It seems to me very preposterous to assert that the intention of parties can impart a salable quality to a promissory note, which in reality is in the hands of the maker. If a man does one thing, intending to do quite a different thing, I cannot perceive how it can be correctly argued that on account of the intention, the thing which was done is, in legal intendment, to be considered to be the thing which was not done. The falsity of the argument for the plaintiff appears to consist in overlooking the circumstance that the transaction is allowed to stand after its real character has been revealed. The plaintiff's eyes have been opened to the realities of the case; he finds that, in point of fact, the defendants, by a deceit, exchanged with him their own note for a sum of money less than its face; and he now insists that, notwithstanding the fraud practiced, such transaction shall stand: in such a posture there seems no escape from the conclusion that the law inexorably declares that the exchange of a man's own note for money, is a borrowing, and cannot be a sale.

Nor do I see any difficulty in harmonizing this theory of the case with that branch of the law which denounces a penalty against the taker of usury. According to the view taken, a man does not commit an act of usury who, under a misapprehension induced by fraud, gives his money in exchange for a note in the hands of the drawer of it, and which

calls for a larger amount than the principal and interest of the money so given. The reason is, he has not yielded his assent to such a contract. On coming at the truth, he has a right to withdraw from it and disavow his entire responsibility. But, on the other hand, after becoming enlightened, he may stand to and ratify the occurrence, having now full knowledge of the facts; if he do this, and exact the illicit interest, no reason is perceived why he should not be subjected to the punishment for usury. It is not a case of hardship; a party defrauded can disaffirm the contract into which he has been inveigled, and recover the money which he has paid, with interest; or he can obtain a full indemnification by a suit, founded on the fraud, against him by whom he was misled. But he cannot ratify a loan and insist, when he brings an action upon it, that the court shall regard it as a sale. In my estimation, the weight of authority is decidedly in favor of this conclusion. *Jones* v. *Hake,* 2 *Johns. Cases* 60; *Wilkie* v. *Roosevelt,* 3 *Johns. Cases* 206; *Munn* v. *Com. Co.,* 15 *John.* 44; *Bosange* v. *Ross,* 29 *Barb.* 576; *Clark* v. *Sisson,* 4 *Duer* 408; *Catlin* v. *Gunter,* 1 *Kern.* 368; *Corcoran* v. *Powers,* 6 *Ohio State R.* 19; *Clark* v. *Loomis,* 5 *Duer* 468; *Powell* v. *Waters,* 8 *Cow.* 669–686; *Edwards B. & N.* 352; 2 *Pars. B. & N.* 426.

But there is a third aspect of this case.

The proof on the part of the plaintiff was that the note in suit was taken by an innocent purchaser, upon the assurance of the agent of the defendants, who was employed to sell the instrument, that it had been put into the market for value and in the legitimate course of business. The defendants did not attempt to overcome this evidence as to the statement of their agent, but their offer was to show that such statement was false, and that, in point of truth, the note had no legal existence until it was purchased by Mr. Kirkland, to whose position the plaintiff has succeeded. Hence arises the third legal problem just referred to, the plaintiff insisting that as Mr. Kirkland acted honestly, on the representations as to the commercial character which the

note at the time of its transfer had acquired, the defendants are conclusively bound by, and cannot be permitted to contradict such representations, to the injury of the plaintiff. The point is, whether the doctrine of *estoppel in pais* applies to this state of facts. To demonstrate that it does, it appears to be necessary only to recur to the definition of an estoppel of this sort, which may be said to be the preclusion of evidence to show that information, intended as the basis of conduct, and which has been acted upon, is untrue, the object being to throw a loss on the party who has changed his situation, relying on the truth of such information. Although this doctrine is admittedly of modern origin, it is, nevertheless, now firmly established in both English and American jurisprudence; and, indeed, looking at it with the eye of legal science, it will be found to be nothing more than the natural extension, over an emergent class of cases, of those ancient maxims, that a party is not permitted in a court of justice to set up his own depravity as a defence to a civil action, or that no one can, to the prejudice of another, take advantage of his own wrong. In the present instance the defendants, by their agent, made a statement which was of importance with regard to this note at the time of its acquisition; the person receiving such statement took the note and paid his money, relying on its truth: the question is, can the defendants, in a suit on such transaction, interpose as a defence, the falsity of the information thus communicated and thus acted upon? The case, it seems to me, is one so obviously within the scope of the rule which is invoked, that I do not think it necessary to do anything more than to refer, without comment by way of application, to the cases in which the subject will be found to have been discussed and exemplified. *Pickard* v. *Sears*, 6 *A. & E.* 475; *Coles* v. *Bank of England*, 10 *A. & E.* 439; *Duchess of Kingston's Case*, 2 *Smith's L. C.* 466.

But although I have come to the conclusion that the defendants cannot falsify their own representations in order to defeat this action, yet I still think such evidence is admis-

sible for another, though subordinate purpose. The rule of *estoppel in pais* is intended for the protection of an innocent party, but its effect should not reach beyond the necessary limits of such protection. This, as well as other similar rules of law, must be kept within reasonable bounds, or else, in its turn, it will become an instrument of inconvenience and wrong. If the drawer of a note should, through mistake, admit its validity to a person who, to the knowledge of such drawer, was about to purchase it, after such purchase for full value, it is clear he could not aver his mistake and set up the invalidity of the note as a defence. In such a case it is right that he should bear the loss whose carelessness occasioned it. But suppose the purchaser gave only part value for the note, upon what principle should he be allowed to recover more than the money thus paid of the drawer, who, although he inadvertently admitted his liability, in point of fact owes nothing on the paper. The true measure is, that the party acting on the faith of a representation, should be indemnified from loss,' by the application of the doctrine of the *estoppel in pais*, and these limits, as I think, take in the whole field of the doctrine. The rule is designed to protect against fraud, either in fact or in law; but the remedy does not extend beyond the injury. Neither good policy, nor honest dealing, requires that one who has made an admission which has influenced the conduct of another, should be estopped by such admission from showing the truth of the case, except to the extent of permitting the person misled from recovering indemnification. For it is to be remembered that the principle of estoppel applies as well to cases of unintentional deceptions as to designed and actual frauds; and it would certainly seem plain, that, in the former class of cases, the limitation of the doctrine above indicated, is absolutely necessary for the accomplishment of the ends of justice. The facts in the case of the *Phillipsburg Bank* v. *Fulmer*, 2 *Vroom* 55, present, in a somewhat striking form, the propriety of the restriction on the rule of estoppel which is now indicated. The action was against a

Campbell v. Nichols et al.

garnishee in attachment, and the endeavor was to estop him from showing that he was not indebted in a large sum to the original debtor, on the ground that, prior to the issuing of the attachment, he had made an admission to that effect, on which the plaintiff had acted by commencing the attachment suit. The attempt was to fix the garnishee with a debt, which he offered to prove he did not owe, to an amount exceeding two thousand dollars; and it was not pretended that, by reason of the mistaken information, the bank would lose anything more than the expenses of the attachment suit. Now, concede that the garnishee had misled the plaintiff in the manner claimed; and concede, also, that the admission so made was a mistake, to what extent, in justice and good sense, should the garnishee have been precluded from going into the truth of the case? I think, clearly, to the extent of the injury which the bank had sustained in consequence of his fallacious statement; that is, the fact that the garnishee was not indebted to the original debtor, should not have defeated the action, but should have had the effect to limit a recovery to the expenses of litigation which had fallen on the plaintiff. This case of the *Phillipsburg Bank* v. *Fulmer*, was not decided on this ground, but it is evident from the opinion prepared by Mr. Justice Elmer, that he was in favor of the rule in its restricted form. And although, perhaps, it cannot be said that the principle has been, by repeated adjudications, entirely established, nevertheless, it is clear there are a number of cases in which, with more or less explicitness, it has been recognized, and, in some instances acted upon. Thus, in *Johns* v. *Church*, 12 *Pick.* 307, where a party had acknowledged, in a receipt, that he held in his possession certain property of a defendant in attachment, he was allowed, immediately upon surrendering such property in compliance with the receipt, to replevy it as his own—the principle, obviously, being, that the effect of his declarations on the conduct of the opposite party was spent, and that his subsequent contradiction of them would not have any unfair result. The following are other cases having a similar ten-

dency to illustrate the rule of law in question, in its more confined application.  *Bursley* v. *Hamilton*, 15 *Pick*. 42; *Deweys* v. *Field*, 4 *Met.* 384; *Wallis* v. *Truesdell*, 6 *Pick.* 457; *Miller* v. *Cresson*, 5 *Watts & Serg.* 284; *Welland Canal Co.* v. *Hathaway*, 8 *Wend.* 482.

Applying, then, these conclusions to the case before the court, the result is, that the plaintiff must elect on which ground to stand; that is, he must treat the transaction as usurious, out and out, and rest his right to recover on the laws of this state; or he can insist on the estoppel, and in that event claim judgment for the sum actually paid by Mr. Kirkland for the paper in question.  If the plaintiff accept this latter branch of the alternative, he will be entitled to recover, also, interest and costs.  Let him move for judgment in such form as he may be advised.

CITED *in Holcomb* v. *Wyckoff*, 6 *Vr.* 39; *Freese* ads. *Brownell*, 6 *Vr.* 287.