[No. 19658. Department One. April 14, 1926.]

JAMES GARNER, *Appellant*, v. F. T. CROWE & COMPANY, *Respondent*.[1]

[1] BILLS AND NOTES (64-1, 64-3)—BONA FIDE PURCHASER — GOOD FAITH. The fact of insolvency of an indorser of a negotiable instrument is not alone sufficient to show an infirmity in the title, or notice amounting to bad faith, within Rem. Comp. Stat. § 479; nor is insolvency shown by the evidence where it appears that, at the time of the negotiation, the endorser could pay its honest obligations.

[2] SAME (64-1, 64-3). Neither, in such a case, is bad faith shown by the fact that the creditor sued the drawer in a foreign juris- diction while he still held the obligation of the endorser.

[3] SAME (64-1, 64-3). Neither, in such a case, is bad faith shown by the fact that renewals of the acceptance were arranged in correspondence with the endorser, without communicating with the drawer; and his good faith is not impeached by the fact that he recognized the renewals.

Appeal from a judgment of the superior court for King county, Douglas, J., entered May 9, 1925, upon the verdict of a jury rendered in favor of the defend- ant, in an action on contract. Reversed.

[1]Reported in 244 Pac. 970.

*Battle, Hulbert, Gates & Helsell,* and *Edward G. Dobrin,* for appellant.

*Riddell & Brackett,* for respondent.

FULLERTON, J.—The appellant, Garner, brought this action against the respondent, F. T. Crowe & Co., to recover upon a trade acceptance. There was a trial before a jury, which returned a verdict in favor of the respondent. The appeal is from the judgment entered on the verdict.

The respondent is a dealer in building materials, its place of business being in the city of Seattle. The Vitrifyx Co. is a manufacturer and dealer in wood preservatives, its manufacturing plant and principal place of business being in the city of Chicago. In March, 1921, the respondent purchased a car load of the products of the Vitrifyx Co. and gave to that concern, in part payment for the products purchased, four trade acceptances, due, respectively, on the first days of September, October, November and December of the year 1921, each for the sum of $617.50. As a part consideration for the purchase, the respondent was given the exclusive agency for the sale of the products of the Vitrifyx Co. in the state of Washington. The products seem to have been new or unknown to the building trade of the state named, and it was recognized that a demand would have to be created for them. In consideration of this fact, there was an agreement between the seller and purchaser to the effect, that, if the products did not sell sufficiently fast to take up the acceptances as they matured, the purchaser should have the privilege of renewing and extending them, and it was further agreed that, in the case the agency was terminated, the Vitrifyx Co. would take over at the invoice prices all of the products the respondent should then have on hand.

The appellant, Garner, is an engraver and printer, engaged in business in the city of Chicago. He engraved and printed a large part of the advertising matter used by the Vitrifyx Co. On September 1, 1921, there was a balance due him from the Vitrifyx Co. for services rendered of $1,253.68, and he at that time asked for a remittance. The Vitrifyx Co. was then "financially embarrassed for cash," and indorsed and tendered to the appellant one of the trade acceptances of the respondent. This the appellant accepted, and, when it became due, forwarded it through a banking house to the respondent, and payment thereof was made. Later on in the same year, the appellant made another demand on the Vitrifyx Co. for payment, and was tendered a trade acceptance of the respondent dated September 1, 1921, and due in ninety days. This also the appellant accepted, crediting the Vitrifyx Co. on his books with the amount thereof, less a small discount. This acceptance on its maturity was likewise forwarded for payment, but payment thereof was refused by the respondent. The acceptance was forwarded through a Chicago bank to a bank at Seattle, and the respondent seemingly did not inquire who claimed to own the acceptance, but assumed the owner to be the Vitrifyx Co. and wrote that company claiming the right to renew the acceptance; sending with the letter a new acceptance payable in thirty days. The appellant called the attention of the Vitrifyx Co. to the fact that payment of the acceptance had been refused, but at that time the company had received the renewal acceptance, and it turned the new one over to the appellant and took up the old one. This acceptance was likewise renewed at its maturity, and a new one given in its place, dated February 28, 1922, and due in sixty days. The correspondence relating to this renewal was

had between the Vitrifyx Co. and the respondent; the respondent not yet being aware of its transfer to the appellant.

By the time of the maturity of this last acceptance, the differences between the Vitrifyx Co. and the respondent had become acute, and the respondent refused to pay the acceptance. The action before us was thereupon begun to recover thereon. The respondent set up as a defense its counter-claim against the Vitrifyx Co. and facts thought to show that the appellant was not a holder of the acceptance in due course. The result of the trial of the action, we have hereinbefore stated.

The appellant's principal contention is, that the court erred in refusing to grant his motion for judgment notwithstanding the verdict. He argues that the facts shown are insufficient to constitute a defense, even were the action one brought by the Vitrifyx Co., but we think we need not discuss the particulars of the evidence on the particular question. It is sufficient to say that, in our opinion, as between the respondent and the Vitrifyx Co., there was sufficient evidence on which the jury could well find that there was at least a failure of consideration.

[1] But we find no evidence in the record showing or tending to show that the appellant had notice, even at the time he accepted the second renewal of the acceptance, of the difficulties between the respondent and the Vitrifyx Co. He was in no way interested in the business of the Vitrifyx Co. He was conducting an independent business, and his dealings with that concern were nothing more than the usual dealings of one business concern with another. Having an obligation due him from the Vitrifyx Co., which that concern did not then have the ready cash to pay, he took the acceptance in part payment of the obligation. The ac-

ceptance was a negotiable instrument; it was not then due, and bore no evidence of infirmity on its face. All of the direct evidence is to the effect that, at the time. it was negotiated to him, he had no notice of any infirmity in the instrument, or notice of any defect in the title of the person negotiating it. Nor do we think the indirect evidence sufficient on which to base a contrary conclusion.

It is true, as the respondent argues, that the appellant made no inquiry, at the time he took the acceptance, as to the financial standing of the respondent, and had no other knowledge of its ability to pay; and true, that, instead of suing the Vitrifyx Co. on its indorsement after the respondent had repudiated its liability, he sued the respondent in a foreign jurisdiction where the expense involved would greatly exceed the expense of suing in the jurisdiction where both he and the Vitrifyx Co. resided; and true, also, that the correspondence with reference to the renewals was had between the respondent and the Vitrifyx Co. But the appellant did not stand to lose anything by taking the acceptance. He still had the obligation of the Vitrifyx Co., changed, perhaps, from a liability on a direct obligation to a liability as an indorser on a negotiable instrument, but, nevertheless, a liability on which that company could still be held, and, in addition, be acquired the obligation of the respondent for the same debt. Manifestly, there is nothing in this that ought to create suspicion, much less evidence sufficient to show notice or a purchase in bad faith.

[2] As to the second of the objections, a reason appears in the record for the appellant's conduct. On the cross-examination of one of his witnesses (the secretary and treasurer of the Vitrifyx Co.) the following appears:

"Q. Mr. Garner then accepted this trade acceptance in payment of $617.50, without any knowledge of any correspondence which had taken place between F. T. Crowe & Company, and the Vitrifyx Company, is that true? A. Yes. Q. Do you know whether or not Mr. Garner had ever been in Seattle, Washington? A. I do not. Q. Do you know whether or not he had any knowledge of the financial ability of the F. T. Crowe Company to pay their indebtedness or not? A. I do not. Q. The Vitrifyx Company at the time Mr. Garner took this trade acceptance was solvent, was it not? A. I do not know what you mean by solvent, sometimes we get twisted on that term. Q. It was not in bankruptcy? A. Oh, no. Q. It could pay its honest obligations, could it not? A. At that time, yes."

There is no other evidence as to the financial ability of the Vitrifyx Co. to answer on its liability as an indorser, and this falls far short of showing that the company was financially able to respond at the time of the institution of the present action. The witness carefully guarded her answers. She limited the time the company was able to respond to the time of the negotiation of the instrument, and the examiner was careful not to press the inquiry further. This court has, it is true, held that the circumstance here noted is a circumstance that may be considered along with other facts in determining whether the holder of a negotiable instrument, fair on its face and negotiated before maturity, was a holder in due course, but it has not held that it is alone sufficient to work that result. Nor do we think it should be so held. The negotiable instrument act (Rem. Comp. Stat., § 3447) provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Under this section, to defeat a recovery, bad faith must appear, and it would be extending the doctrine to an unwarrantable length to say that the holder of a negotiable instrument is guilty of bad faith, merely because he chooses to pursue the person primarily liable on the instrument rather than pursue one secondarily liable, even though to pursue the latter may be the more convenient.

[3] As to the third of the objections, the nature of the transaction makes it clear why the correspondence was had with the Vitrifyx Co. As we have said, the respondent did not then know there had been a transfer of the acceptance, and as its contract permitting it to renew was with the Vitrifyx Co., naturally its correspondence would be with that company. While the appellant was not obligated to recognize the right of renewal, the fact that he did do so in no way impeaches his good faith. It must be remembered that the respondent was not itself then repudiating its liability; it not only forwarded a renewal with the correspondence, but it renewed the obligation a second time. Moreover, all of the direct evidence is that the appellant was not shown the correspondence and had no knowledge of its purport. After the respondent finally refused payment, he was informed of its claims, but at that time his right to claim as a purchaser without notice and in good faith was fixed.

Negotiable instruments, of the character of the one here in question, have ever been the favorite of the law merchant. They are an essential to the transaction of a commercial business, and to allow them to be set aside for anything other than cogent reasons, would be to hamper and interfere with their use, if it would not destroy their principal value in such transactions.

It is unnecessary to review the many cases cited by counsel. The principles they announce are well under-

stood and are not here disputed, and to review them would be but to point out the distinction between the facts they present and the facts of the present case.

Our conclusion is, that there is no evidence sustaining the finding that the appellant is not a holder in due course, and that the court should have entered a judgment allowing a recovery notwithstanding the verdict of the jury.

The judgment is reversed and the cause remanded with instructions so to do.

TOLMAN, C. J., HOLCOMB, PARKER, and MAIN, JJ., concur.