[No. 32649. Department Two. May 13, 1954.]

JOHN W. SINNAR, *Respondent,* v. HARRY K. LEROY *et al.,*
*Appellants.*[1]

*Torbenson, Baum & Thatcher,* for appellants.

*Simmons & Yates,* for respondent.

WEAVER, J.—Plaintiff brings this action to recover four
hundred fifty dollars which he delivered to defendant upon
the latter's promise either to get a beer license for plaintiff
or return the money. Defendant appeals from a judgment
against him.

Respondent owns and operates a grocery store on Jack-
son street, in Seattle. Prior to the transaction involved,
he made application to the Washington state liquor control
board for a license to sell beer, and paid sixty dollars license
fee; the license was denied and the license fee returned.

Appellant, a customer, neighbor, and friend of respond-
ent, is a business machine operator at Boeing Airplane
Company. When the license was denied, the parties dis-
cussed the matter. Appellant testified:

[1] Reported in 270 P. (2d) 800.

"Well, I talked to—I told John [respondent] that I knew a fellow that worked for the—well, at that time I didn't know that the license come from the state, I thought beer licenses like these come from the city, and I knew this Mr. Lewis worked for the city in this County-City Building here for a number of years, and so then I talked to Mr. Lewis and he said that—(interrupted). . . . after I told him I thought I could get the license, I told him I'd see about it, and then I called about it, and I called him, after telephone conversations back and forth to me, and then I called John [respondent] . . . and I told him that it would cost him $450.00, and that's all I said and then I went on to work."

Both parties knew that a third party was to be involved. Appellant testified that he gave respondent's four hundred fifty dollars cash to a Mr. Lewis, who is not identified except as reference was made to him in appellant's testimony, herein quoted. Respondent did not receive a beer license.

He testified:

"Well, I told him to be careful who he gives the money to. I found out that this was just a sucker game, and knowing him as well as I did, I thought he'd do me some good. Q. What, if any, conditions were attached to the delivery of the money? A. Well, he told me the license or the money back. He said it was good as in the bank. . . . I didn't care how. He was to get my license or the money back. I didn't care what he done with it, whether he bought a retired license or what."

Respondent testified several times that he told appellant to be "careful who he gave the money to." There is no indication in the evidence that the money was paid for professional services.

Appellant's assignments of error are presented upon the theory that this was an illegal transaction. The defense of illegality not having been pleaded, respondent argues that appellant is foreclosed from raising the question. We cannot agree with this conclusion.

"Illegality, if of a serious nature, need not be pleaded. If it appears in evidence the court of its own motion will deny relief to the plaintiff. The defendant cannot waive the defense if he wishes to do so. Indeed, if the court sus-

pects illegality, it may examine witnesses and develop facts not brought out by the parties, and thereby establish illegality that precludes recovery by the plaintiff. If, however, the illegality is not serious, and neither public policy nor statute clearly requires denial of relief, courts refuse to give effect to facts showing illegality unless those facts are essential to establish a prima facie right of recovery or are pleaded by defendant." Restatement, Contracts, § 600, Comment a.

The only place such a license might have been secured was from the Washington state liquor control board. Laws of 1937, chapter 217, § 1, § 23-U, p. 1066 (Rem. Rev. Stat. (Sup.), § 7306-23U [cf. RCW 66.24.010]), provides:

"The holder of one or more licenses may assign and transfer the same to any qualified person under such rules and regulations as the board may prescribe: *Provided, however,* That no such assignment and transfer shall be made which will result in both a change of licensee and change of location; the fee for such assignment and transfer shall be ten dollars ($10.00)."

The illegality, which is claimed and argued in the instant case, is of a serious nature. The situation involves a beer license, which can be secured only from an agency of the state; it purports to deal with a matter which is exclusively within the realm of public policy. A party to such a situation cannot waive his right to set up the defense of illegality, and, if the evidence produced in support of the cause of action also establishes the illegality of the transaction, it should be considered by the trier of the facts, even though illegality has not been pleaded as a defense. *Rathke v. Yakima Valley Grape Growers Ass'n,* 30 Wn. (2d) 486, 496 to 501, 192 P. (2d) 349 (1948), and cases cited.

This conclusion is not in conflict with our opinion in *Hall v. Anderson,* 18 Wn. (2d) 625, 140 P. (2d) 266, 148 A. L. R. 760 (1943). The *Hall* case was presented to this court after a demurrer had been sustained to the complaint —not after evidence had been submitted which would support a conclusion of illegality.

In principle, we cannot distinguish the instant case from

*Goodier v. Hamilton,* 172 Wash. 60, 63, 19 P. (2d) 392 (1933), wherein we said:

"It is within the realm of contemplation that a contract of this nature would readily suggest to one desirous of securing a highly compensatory result, to employ means which the law, good morals and public policy do not sanction. To anticipate and prevent a subversion of a proper administration of justice, the law should make it impossible for any such temptation to be carried into fruition by condemning a contract that contains the germ of possible corruption."

The record not only discloses that this transaction "contains the germ of possible corruption," but the evidence, and all inferences which may be drawn, lead us to conclude that the parties contemplated the use of means other than legal to accomplish the end desired.

A court will not knowingly aid in the furtherance of an illegal transaction, but will leave the parties where it finds them.

The judgment is reversed, with instructions to dismiss the action. Since the parties are in *pari delicto*, it is consistent with our decision that each bear his own costs.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.