[No. 2233–2.  Division Two.  November 29, 1977.]

TACOMA COMMERCIAL BANK, *Appellant,* v. ERNEST J. ELMORE, ET AL, *Respondents.*

*Herbert Gelman* and *Gelman & Couture,* for appellant.

*Frank August Peters,* for respondents.

PETRIE, J.—Plaintiff, Tacoma Commercial Bank, appeals from a judgment in its favor and against defendants, Mr. and Mrs. Ernest J. Elmore, in the amount of $19,580.31. On appeal, plaintiff contends the trial court erred (1) by permitting the defendants to raise the defense of usury by a trial amendment, and (2) by concluding that the promissory note upon which plaintiff's action was founded was usurious. We find no error and affirm the judgment.

There is no dispute as to the essential facts. On May 22, 1974, for valuable consideration, defendants executed a renewal promissory note in the principal amount of $21,300, payable quarterly with interest at 12 percent per annum. The principal amount of the renewal note was determined by adding to the delinquent principal and interest due on two prior notes an additional sum, which included an appraisal fee of $100 and a loan fee of $336.69. Both of these sums were subsequently credited to the bank as income. No appraisal was ever made, the bank's president explaining simply, "I accepted Mr. Elmore's statement as to the value." The loan fee was explained as a fee that "is usually charged [by the bank] as a percentage of the amount of the loan."

We hold, initially, that the trial court did not abuse its discretion by permitting a trial amendment to the defendant's answer. *See* Cr 15(b); *Harding v. Will,* 81 Wn.2d 132, 500 P.2d 91 (1972). When the motion was made, the court reserved ruling until the conclusion of the trial. At the conclusion of the trial, the court granted the motion for the reason that evidence had been introduced to support a trial amendment. Although the preferred trial procedure would have dictated a ruling on the motion when it was made, we do not find the plaintiff was prejudiced by the manner in which the court ruled. *See LaHue v. Keystone Inv. Co.,* 6 Wn. App. 765, 496 P.2d 343 (1972).

The more serious issue is whether or not the court erred by concluding the note was usurious.

We start with the statutory definition of a usurious contract.[1] RCW 19.52.030, as amended in 1967, specifically defines the term as follows:

If a greater rate of interest than is allowed by statute shall be contracted for or received or reserved *the contract shall be usurious,* but shall not, therefore, be void.

(Italics ours.)

Supplementing this statutory definition is RCW 19.52-.020, which provides in part:

Any rate of interest not exceeding twelve percent per annum agreed to in writing by the parties to the contract shall be legal, and no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or things in action than twelve percent per annum:. . .

In the case at bench, defendants unquestionably proved that a greater rate of interest than 12 percent per annum had been indirectly contracted for, taken, or reserved. Plaintiff insists, however, that before the statutory penalties can be imposed upon the lender under an otherwise usurious contract, the trial court must find as an element of usury that at the time the transaction was executed the

---

[1]Prior to 1967, the word "usurious" was not statutorily defined. RCW 19.52-.030 merely declared that a contract which provided a rate of interest greater than "hereinbefore allowed . . . shall not, therefore, be void" but, instead, imposed certain penalties when such contracts were sought to be enforced. The changes enacted in 1967, following adoption of a single, but lengthy, floor amendment (to a possibly inappropriate bill which, until then, would simply have authorized interest, costs and attorney's fees for certain dishonored checks), statutorily defined such contracts as usurious, created statutory authority for creditors and noncorporate debtors to test the usurious nature of contracts by an action for declaratory judgment, authorized the granting of attorney fees to some debtors who prove the usurious nature of a contract, and declared the transacting of a usurious contract an unfair act or practice under the consumer protection act. See Senate Journal of the 40th Legislature p. 1427 (1967). In the case at bench, the parties do not address the issue of whether or not the 1967 enactment altered the body of common law which, by judicial pronouncement, had theretofore defined a usurious contract. Neither do we.

lender had "an intention to violate the law" or, at least, "an intent to exact more than the legal maximum for the loan or forbearance." *See Baske v. Russell,* 67 Wn.2d 268, 407 P.2d 434 (1965) and *Hafer v. Spaeth,* 22 Wn.2d 378, 156 P.2d 408 (1945). The trial court failed to enter such a finding. Thus, plaintiff asserts, usury penalties should not be imposed to reduce the judgment debt.

In support of this contention, plaintiff directs our attention to a recent opinion of another division of this court, *Atlas Credit of Cal., Inc. v. Hill,* 15 Wn. App. 146, 547 P.2d 894 (1976). In *Atlas Credit,* the essential issue was whether the transaction was a good faith time sale or a camouflaged loan. Surreptitiously included within the total conditional sales price was an acknowledged "loan" of $1,000, the reserved interest on which, if standing alone, could have categorized the transaction as usurious. The court denied the defense of usury because of the trial court's failure to find "'an intent to exact more than the legal maximum for the loan or forbearance.'" (Quoting *Hafer v. Spaeth, supra* at 383.) The court relied upon the oft–repeated rule that the failure of the trial judge to make an express finding on a material fact requires the appellate court to deem the fact to have been found against the party having the burden to prove that fact. *Baillargeon v. Press,* 11 Wn. App. 59, 521 P.2d 746 (1974); *McCutcheon v. Brownfield,* 2 Wn. App. 348, 467 P.2d 868 (1970). Usury is an affirmative defense, and the burden of proof is upon the party who asserts it. *Malotte v. Gorton,* 75 Wn.2d 306, 450 P.2d 820 (1969). Hence, the court in *Atlas Credit* held, quite properly, that the trial court erred by imposing the penalties for usury prescribed by RCW 19.52.030.

However, in the case at bench the nature of the transaction entered into is undisputed. Indeed, the precise nature of the entire transaction is established by the testimony of plaintiff's president. Under those circumstances, we cannot assert unequivocally that the absence of a finding of "intent" is in effect a finding that the requisite intent did not exist. That principle is inapplicable, at least for

purposes of affirming the judgment, if there is uncontradicted evidence which the appellate court can hold requires a finding to the contrary. *LaHue v. Keystone Inv. Co., supra.*

Thus, we are forced to probe somewhat minutely into the nature of the "intent" necessary to support a conclusion that a transaction is usurious.

Under the common law promulgated in this jurisdiction, the precise nature of the requisite "intent" was articulated more than 60 years ago. In *Washington Fire Ins. Co. v. Maple Valley Lumber Co.,* 77 Wash. 686, 692, 138 P. 553 (1914), the court expressed itself quite plainly:

> One of the requisites necessary to establish usury is an unlawful intent, that is, that there was an intent to do those things forbidden by the statute. It is not necessary that there be an intent to violate the usury statute as such. *The law presumes the necessary unlawful intent from the mere fact of intentionally doing what is forbidden by the statute.*

(Italics ours.) *See also Ridgway v. Davenport,* 37 Wash. 134, 79 P. 606 (1905). No case altering that statement of the law has been brought to our attention.

Notwithstanding this clearly enunciated statement as to the requisite intent by which to test whether or not a transaction is usurious, several misleading statements have crept into the decisional law in this jurisdiction by way of obiter dictum. In *Hafer v. Spaeth, supra,* the court, while generally defining the essential elements of usury in a case in which "intent" was not an issue, meticulously added a prefatory statement to the fifth element by announcing at page 383 "and, *in some jurisdictions,* (5) an intent to exact more than the legal maximum for the loan or forbearance." (Italics ours.)

In subsequent cases, the prefatory statement was sometimes omitted. The omission is quite appropriate, of course, so long as the fifth element is understood in the manner in which it was declared in *Washington Fire Ins. Co. v. Maple Valley Lumber Co., supra.*

More recently, another statement entered the body of the law which, if not properly explained, can lead to a misleading result. In *Baske v. Russell, supra,* the primary issue was the extent to which the lender was chargeable with knowledge of the true nature of the transaction. Included within the majority opinion of *Baske* is a quotation from 55 Am. Jur. *Usury* § 12 (1946) which specified that an element of usury was "an intention to violate the law." The quotation closed, however, with the following modifying sentence (which, incidentally, has been continued in essentially the same language in 45 Am. Jur. 2d *Interest and Usury* § 111 (1969)):

The test to be applied in any given case is whether the contract, if performed according to its terms, would result in producing to the lender a rate of interest greater than is allowed by law, and whether such result was intended."

*Baske v. Russell, supra* at 270.

Subsequent cases have repeated the expression, "an intention to violate the law" without inclusion of the modifying language in the concluding sentence. More important, the textual material in the article on *Usury* in 55 Am. Jur., discussing the subtopic of intent, contains the following significant statement at section 35:

While the principle that intent which is concurred in by both the borrower and the lender is necessary to constitute usury has often been enunciated by the courts, their decisions are widely divergent and frequently utterly repugnant to the general rule laid down.

(Footnote omitted.) *See also Simpson v. C.P. Cox Corp.,* 167 Wash. 34, 8 P.2d 424 (1932) where the primary issue was whether $500 of a promissory note in the face amount of $3,500 was intended as additional interest for the use of $3,000 (and thus was usurious) or whether the $500 represented a guaranteed profit on a joint venture in which the parties had agreed to participate. The trial proceeded on the theory that the defendants were indebted to plaintiff in the amount of $3,000 plus interest, and judgment was

entered for that amount. On appeal, the judgment was affirmed on the theory that the transaction was not usurious because the intent of the parties was not to engage in a transaction which would have been prohibited by the usury statute.

In the course of the opinion the court quoted with approval from 39 Cyc. 917 as follows:

"Since usury laws are quasi–penal, the courts will not hold a contract to be in violation of the usury laws unless upon a fair and reasonable construction of all of its terms, in view of the dealings of the parties, it is manifest that *the intent of the parties was to engage in such a transaction as is forbidden by those laws.* If two reasonable constructions are possible, by one of which the contract will be legal and valid, while by the other it will be usurious and invalid, the court will always adopt the former. In short the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained on any other hypothesis."

(Italics ours.) *Simpson v. C.P. Cox Corp., supra* at 37.

■ From the foregoing discussion, we derive the real question to be resolved is not whether a prohibitive rate of interest was intentionally contracted for by the parties, but, rather, whether what in fact the parties intentionally did was forbidden by statute. *Jupiter Fin. Corp. v. Hess,* 157 Wash. 29, 288 P. 226 (1930).

Measured by that standard, there is simply no doubt that in exchange for the plaintiff bank's forbearance to sue on the two delinquent notes, the bank's president and the defendants intended that the Elmores would execute a promissory note which bore interest at the rate of 12 percent per annum and whose principal included two additional charges imposed upon the borrower for continued use of the bank's money. Accordingly, the real rate of interest exacted was in excess of 12 percent per annum, and the contract was usurious. *Busk v. Hoard,* 65 Wn.2d 126, 396 P.2d 171 (1964).

782

Judgment affirmed.

REED, A.C.J., and JOHNSON, J. Pro Tem., concur.