[No. 14736–6–I. Division One. August 4, 1986.]

METRO HAULING, INC., *Respondent*, v. RUSSELL DAFFERN, ET AL, *Appellants*.

*Gary M. Abolofia,* for appellants.

*Jack R. Davis, Anthony C. Davis,* and *Allison, Davis & Baldwin,* for respondent.

SCHOLFIELD, C.J.—Russell Daffern appeals from the trial court's denial of his counterclaim for relief under the usury statute in an action against him on a promissory note. We reverse.

On May 1, 1980, Daffern purchased a truck and trailer from Metro Hauling, Inc. Daffern executed as maker a promissory note for $27,000 at 12 percent interest, to be paid in monthly installments of $711.02. Metro retained title to the vehicles as security.

Daffern was chronically behind in payments, and Metro notified him that, as of February 15, 1981, it would begin charging additional interest as a late charge on his delinquent account. Daffern stated that he objected to the late charge, but had no more desirable alternative but to pay. In April, Metro commenced charging 18 percent interest on the delinquent balance until Daffern's account was brought current in September 1982. Later that year, the parties terminated their relationship and Metro accelerated payment of the note. Daffern refused to pay the balance demanded, and Metro brought suit for moneys due and to foreclose on its security. Daffern counterclaimed for usury.

The trial court framed the issue as one of contract law, ruling that Metro had made an invalid attempt to modify the terms and conditions of the original contract. The court

rejected Daffern's usury claim, concluding that Metro had not "attempted or intended to . . . commit a usurious act" since the late charge would have been lawful if contracted for. Conclusion of law 3. The court ordered the balance due on the note recalculated at 12 percent interest and held that each party should bear its own attorney's fees.

Former RCW 19.52.020 prohibited as usurious the receipt of interest, directly or indirectly, in excess of 12 percent for the loan or forbearance of money. Usury is an affirmative defense, *Tacoma Comm'l Bank v. Elmore,* 18 Wn. App. 775, 778, 573 P.2d 798 (1977), and the party asserting it has the burden of proving by a preponderance of the evidence: (1) a loan or forbearance; (2) money or its equivalent as the subject of the loan or forbearance; (3) an agreement that the principal shall be repayable absolutely; (4) the exaction of a rate of interest in excess of that allowed by law for the use of the money loaned or for the benefit of the forbearance; (5) an intention to violate the law. *Liebergesell v. Evans,* 93 Wn.2d 881, 887, 613 P.2d 1170 (1980). Upon proof of usury, the debtor is entitled to costs and reasonable attorney's fees, plus other remedies depending upon whether or not the excessive interest was actually paid. RCW 19.52.030. The elements of proof at issue here are the lawfulness of Metro's attempt to extract excessive interest and the requisite intent necessary to constitute usury.

The "intent" necessary to establish usury is not intent of a culpable nature, but simply an intent to enter into a transaction which in fact carries an unlawful rate of interest. *Tacoma Comm'l Bank v. Elmore, supra* at 781. In the instant case, therefore, Daffern was only required to prove that Metro intentionally, rather than mistakenly or inadvertently, extracted the excessive interest, not that Metro intended to violate the usury law. The trial court's unappealed finding that the 18 percent interest was charged at the direction of Metro's vice–president, and not as a result of mistake or oversight, is conclusive on that point. *Pier 67, Inc. v. King Cy.,* 71 Wn.2d 92, 94, 426 P.2d 610 (1967). What remains to be determined is the lawful-

ness of Metro's attempt to collect excessive interest as a late charge.

■ As a general rule, a provision in a note by which the debtor agrees to pay, after maturity, interest at a rate higher than that allowed by law, does not render the transaction usurious provided the parties acted in good faith and did not intend to evade the usury law. *Union Bank v. Kruger,* 1 Wn. App. 622, 626, 463 P.2d 273 (1969). The debtor has it within his power to avoid the additional interest charge by prompt payment of his obligation and, therefore, the contingency upon which the excessive interest comes into existence is not solely within the lender's control. *Union Bank v. Kruger, supra;* 45 Am. Jur. 2d *Interest and Usury* § 182 (1969).

Metro argues that, since such a provision would have been lawful if included in the contract initially, likewise it would have been lawful for the parties to have agreed afterward to modify the contract to provide for the 18 percent interest on delinquent payments. Thus, the imposition of the late charge, Metro maintains, was an unenforceable modification of the contract, but was not usury since there was no attempt to extract an unlawful interest rate. We disagree.

A late charge cannot be used as a means to evade the usury law, but may be included in a contract to induce the debtor's prompt payment. *Union Bank v. Kruger, supra.* The parties must enter into the transaction with a good faith expectation that the debtor will meet his obligations in a timely fashion and avoid the excessive interest charges. The debtor knows at the outset that, if he chooses to contract on those terms, any payment of excessive interest will be attributable to his own fault.

However, the same transaction is deemed usurious when the agreement to pay excessive interest is not made until after the maturity of the obligation. 45 Am. Jur. 2d, *supra.* At that point, it is unknown whether or not the debtor would have entered into the original contract had it been subject to a late payment charge. Depending upon the cir-

cumstances, the debtor might be obliged to accept whatever terms the creditor offered in exchange for forbearance. If the debtor was already in arrears on payments, moreover, presumably he could no longer avoid the excessive interest charges. The law prohibits a party from agreeing to pay excessive interest rates in precisely this type of situation.

The usury statute "is designed to protect those who by adversity and necessity of economic life are driven to borrow money at any cost." *Baske v. Russell*, 67 Wn.2d 268, 273, 407 P.2d 434 (1965); RCW 19.52.005. This paternalistic policy would not be served were we to allow parties to modify their contracts after the debtor is in default, and provide for excessive interest on late payments. *Cf. Tacoma Comm'l Bank v. Elmore, supra* (held contract was usurious where, for forbearance on two delinquent notes, debtor agreed to execute a promissory note where the actual rate of interest extracted exceeded 12 percent per annum). Such a transaction would be usurious.

In the case sub judice, the parties could have provided in the original note that interest on delinquent payments would be 18 percent. Daffern could have declined to contract on those terms or could have negotiated for terms that would be acceptable to him, and would know before entering into the agreement that additional interest would be charged on his delinquent account. After Daffern was in default, however, Metro could not lawfully change the agreement and charge 18 percent interest even if Daffern agreed to modify the contract. Consequently, the trial court was incorrect. Rather than an attempt to charge a lawful, albeit excessive interest rate, Metro's extraction of 18 percent interest was usurious.

Metro's reliance on the exception from the usury law for conditional sales as stated in *Hafer v. Spaeth*, 22 Wn.2d 378, 156 P.2d 408 (1945) is misplaced. That portion of *Hafer* was overruled before Metro imposed the excessive interest rate on the conditional sale to Daffern. *Whitaker v. Spiegel, Inc.*, 95 Wn.2d 661, 623 P.2d 1147, 637 P.2d 235 (1981).

Therefore, Metro was guilty of usury, and the trial court's denial of Daffern's counterclaim is reversed and remanded to the court to determine the attorney's fees and costs and other statutory remedies to which Daffern is entitled under RCW 19.52.

WILLIAMS and COLEMAN, JJ., concur.