[No. 7603–2–III.   Division Three.   June 23, 1987.]

DANIEL CUEVAS, ET AL, *Appellants,* v. RICHARD MONTOYA, *Respondent.*

*Steven Clem* and *Clem & Zanol, P.S.,* for appellants.

*Fred Montoya* and *Montoya & Kinkley,* for respondent.

McInturff, C.J.—Daniel and Shirley Cuevas sued Richard Montoya, claiming he charged them excessive attorney fees, usurious interest rates and violated the Consumer Protection Act. Mr. Montoya answered, claiming that the Cuevases owed him attorney fees, and sought collection on a promissory note. The two actions were consolidated. The Superior Court reformed a statutory warranty deed to a mortgage and awarded Mr. Montoya judgments for attorney fees, the balance due under the promissory note and attorney fees to collect on the promissory note.

The Cuevases raise several issues; however, because the law involved is not precedential, we decline to publish all but the solution of those issues which focus on the loans made by Mr. Montoya to the Cuevases in light of the usury laws. Mr. Montoya performed legal services for Mr. and Mrs. Cuevas from 1981 through 1983. He represented Mr. Cuevas on several matters.

Mr. Montoya made loans to the Cuevases out of his "earned fees" in his trust account. Additionally, Mr. Montoya borrowed money from Security Bank on two occasions, which he then loaned to the Cuevases. On January 15, 1982, Security Bank loaned Mr. Montoya $3,000 at 18 percent interest. A collection account was created; the collection

agreement provided that Shirley Cuevas was to make payments to be applied on Mr. Montoya's loan account. Security Bank charged $104 as a setup fee, which Mr. Montoya claims should be reimbursed by the Cuevases and is included in his claim for fees. The Cuevases signed a promissory note for $3,000 at 18 percent interest, payable to Mr. Montoya. The usury ceiling in January 1982 (at the time the $3,000 loan was made) was 15.55 percent.

In the second loan transaction, Mr. Montoya borrowed approximately $8,000 from Security Bank, securing it with property Mr. and Mrs. Cuevas had deeded to him by warranty deed. He indicated the loan was for operating capital. The interest rate charged on the loan was adjusted monthly at the prime rate plus 2.5 percent; at no time during the loan did the bank charge less than 13 percent. Mr. Montoya prepared a promissory note for $8,300 dated April 1, 1983, which Shirley Cuevas signed, providing for interest of 12 to 13 percent. The usury ceiling on April 1, 1983 was 12.67 percent. The Cuevases made two payments. Mr. Montoya charged the Cuevases attorney fees for his time related to the loan transactions. Exhibit 52, which apparently summarized these charges, is not a part of our record. Plaintiff's brief, at 12–15, states Mr. Montoya's attorney fees on the $3,000 loan were $399 and on the $8,000 loan were $742.

Mr. Montoya presented billings at trial for the time representing the Cuevases. The total attorney fees and loan balances Mr. Montoya claimed due at the time of trial was $8,390.42. The court reduced this to $8,075.42, subtracting a charge for representation of another person which the trial court held unenforceable under the statute of frauds.

First, the Cuevases contend the loans made by Mr. Montoya to the Cuevases were usurious. This discussion involves three subissues:

A. Were the stated interest or actual interest charges usurious?

RCW 19.52.020(1) sets the maximum legal rate of interest. It also forbids anyone from directly or indirectly taking

or receiving any greater interest for the loan.

The party asserting usury must prove five elements by a preponderance of the evidence:

(1) a loan or forbearance; (2) money or its equivalent as the subject of the loan or forbearance; (3) an agreement that the principal shall be repayable absolutely; (4) the exaction of a rate of interest in excess of that allowed by law for the use of the money loaned or for the benefit of the forbearance; (5) an intention to violate the law.

*Metro Hauling, Inc. v. Daffern,* 44 Wn. App. 719, 721, 723 P.2d 32 (1986) (citing *Liebergesell v. Evans,* 93 Wn.2d 881, 887, 613 P.2d 1170 (1980)); *Aetna Fin. Co. v. Darwin,* 38 Wn. App. 921, 923–24, 691 P.2d 581 (1984).

The intent necessary to establish usury is not intent of a culpable nature, but simply intent to enter a transaction which in fact carries an unlawful rate of interest. *Metro Hauling,* at 721. The plaintiff need not show defendant intentionally violated the usury laws, only that the extraction of the unlawful interest was not the result of mistake or oversight. *Metro Hauling,* at 721.

■ *Aetna Fin. Co.,* at 924, applied the usury statute in effect before the 1981 amendments which added exemptions. The statute in effect before 1981 had only a limited exemption for transactions in excess of $50,000 made exclusively for business purposes. *Aetna,* at 924, held that when a loan is usurious *on its face* the burden is on the lender to prove the loan qualifies for the narrow transactions exemption.

Mr. Montoya claims that where the maker of a note does not pay a penalty which would have made the rate of interest usurious, the contract is not usurious. *Western Loan & Bldg. Co. v. McGillivrae,* 141 Wash. 392, 396, 251 P. 770 (1926). However, in *Western Loan,* at 395, the contract was not usurious on its face; rather, the lender, under guise of penalties and delinquent charges, attempted unsuccessfully to exact more than the interest stated on the face of the contract and the legal rate of interest.

Two promissory notes were executed by the Cuevases to

Mr. Montoya. The first loan of $3,000, bearing interest at 18 percent per annum, was on January 11, 1982. The usury ceiling was 15.55 percent per annum on the date of the loan. Mr. Montoya attempted to collect a $104 fee to establish a collection account and attorney fees for his time in setting up the loan.

The trial court concluded that "by the time plaintiffs paid defendant the effective interest rate was less than 12 percent", therefore, there were no usurious charges on the loan. The record shows three payments totaling $3,000 were made to the collection account and the total interest paid was $327.40. Mr. Montoya's bill, however, showed he charged the Cuevases $540 in interest on the $3,000 note, despite the fact they repaid $2,000 of the loan within 5 months after they took it out. The sum of $540 equals interest at 18 percent on $3,000 for 1 year. Subsequently, Mr. Montoya testified that the amount of interest he actually collected was the approximately $330 paid to his collection account. Assuming $330 is the actual interest assessed, it is at an 18 percent annual rate for the amount of time the loan was actually outstanding.[1]

Mr. Montoya made a second loan for $8,300 to the Cuevases on April 1, 1983. The promissory note provided for interest at "12 to 13 percent per annum", plaintiffs to pay the variable interest charged on Mr. Montoya's loan by Security Bank. The usury ceiling at the time the loan was made was 12.67 percent. There was evidence in the record that at no time was the interest charged by Security Bank less than 13 percent. The Cuevases paid two payments to Mr. Montoya at the usurious rate and were found liable for all principal and interest paid by Mr. Montoya to Security

---

[1]The $3,000 promissory note was dated January 11, 1982. From Janet Twombley's testimony regarding the collection records, a payment was made on May 14, 1982, composed of $176.02 interest and $1,823.94 principal. A second payment was made on January 28, 1983, composed of $150.21 interest and $850.34 principal. A third payment was made February 16, 1983, composed of $2.89 interest and $325.92 principal. By our calculations, $176.06 interest on $3,000 for 4 months is approximately 18 percent.

Bank.

We hold usurious interest rates are stated on the face of both promissory notes. Additionally, payments made by the Cuevases included interest computed at usurious rates. Therefore, the judgment of the trial court enforces usurious interest rates.

> B. Should the trial court have treated the loan setup costs and attorney fees as interest in analyzing whether the loans were usurious?

Mr. Montoya charged the Cuevases $399 in attorney fees to set up the $3,000 loan and claims he should be reimbursed for a $104 setup fee for the collection account at the bank regarding this loan. Mr. Montoya charged the Cuevases $742 in attorney fees to set up the $8,000 loan. The Cuevases claim these charges should be categorized as interest in determining if the loans were usurious.

Under RCW 19.52.020, a setup charge is exempt from characterization as interest only if made in connection with a loan of $500 or less. *Aetna Fin. Co.*, at 926. "Charges for making a loan and for the use of money are interest; charges are not interest if they are for services actually provided by the lender, reasonably worth the price charged, and for which the borrower agreed to pay." *Aetna Fin. Co.*, at 926. In *Aetna Fin. Co.*, at 926, charges for the administrative services described as "preparing the loan documents, arranging and paying off the [loans], . . . arranging the payment of the truck, recording fees and loan disbursement" were held to be setup charges normally incidental to making a loan, thus treated as *interest*.

Under *Aetna Fin. Co.*, the trial court should have classified as interest the attorney fees Mr. Montoya charged the Cuevases relative to the loans because they amount to charges for services normally incidental to making a loan. Additionally, the setup fee Mr. Montoya passed on to the Cuevases on the $3,000 loan should have been treated as interest under the *Aetna Fin. Co.* rule. To the extent these charges exceed allowable interest charges under the usury

statute, they are not recoverable by Mr. Montoya.

C. Was Mr. Montoya entitled to an award of attorney fees under the promissory note?

█ RCW 19.52.030(1) provides that "[i]f a greater rate of interest than is allowed by statute shall be contracted for or received or reserved . . . the creditor shall *only* be entitled to the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest". (Italics ours.) In *Aetna Fin. Co.*, at 929, the court stated "under RCW 19.52.030(1), a lender who sues to enforce a usurious loan contract may not recover attorney's fees or costs, notwithstanding contrary contract terms." The usurer is entitled to recover only the principal, less the penalty for usury. *Clausing v. Virginia Lee Homes, Inc.*, 62 Wn.2d 771, 775, 384 P.2d 644 (1963).

The trial court's award to Mr. Montoya of $1,751.25 for attorney fees under the promissory note is therefore reversed.

Second, the Cuevases contend the loans Mr. Montoya made to the Cuevases violate the Consumer Protection Act. RCW 19.52.036 declares that entering or transacting a usurious contract is an unfair trade or practice for the purpose of application of the Consumer Protection Act found in RCW 19.86.

█ To make out a private claim under the Consumer Protection Act, the plaintiff ordinarily must show five essential elements: (1) the act or practice is unfair or deceptive; (2) it occurred in trade or commerce; (3) the act affected the public interest; (4) it resulted in injury to plaintiff's business or property; and (5) there was a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986).

However, when usury has been shown, the plaintiff need not show the first two elements of a private claim under the Consumer Protection Act because the usury statute expressly declares the Consumer Protection Act is violated

by entry into a usurious contract. *Whitaker v. Spiegel, Inc.*, 95 Wn.2d 661, 674, 623 P.2d 1147, 637 P.2d 235 (1981); *Hangman Ridge,* at 786.

The Cuevases still must prove the last three elements of a private cause of action. Here, the Cuevases showed injury to their property—the unlawful interest is a financial injury. The usurious loan terms were the cause of the Cuevases' financial injury. The public interest requirement may be satisfied per se by showing that a statute has been violated which contains a specific legislative declaration of public impact. *Hangman Ridge,* at 791. The usury statute, RCW 19.52.005, contains a declaration of policy which meets the per se public interest requirement:

> RCW 19.52.005, 19.52.020, 19.52.030, 19.52.032, 19.52-.034, and 19.52.036 are enacted in order to protect the residents of this state from debts bearing burdensome interest rates; and in order to better effect the policy of this state to use this state's policies and courts to govern the affairs of our residents and the state; and in recognition of the duty to protect our citizens from oppression generally.

Thus, the Cuevases have shown all five elements of a private consumer protection action.

The Consumer Protection Act provides penalties including recovery of actual damages, costs of the suit including reasonable attorney fees and discretionary triple damages not to exceed the lesser of $10,000 or three times the actual damages sustained. RCW 19.86.090. In 1983, the limit on treble damages was increased from $1,000 to $10,000; *Swain v. Colton,* 44 Wn. App. 204, 206, 721 P.2d 990 (1986) held the amendment applied prospectively only. The effective date of the amendment was July 24, 1983. Laws of 1983, ch. 288, § 3, p. 1403.

Mr. Montoya made the $3,000 loan to the Cuevases on January 11, 1982, and the $8,300 loan on April 1, 1983. Therefore, the preamendment $1,000 limit on treble damages is applicable to these loans.

Given our holding that the loans made by Mr. Montoya

are usurious, the Consumer Protection Act is applicable. On remand, damages, attorney fees and costs should be awarded to the Cuevases under the Consumer Protection Act.

Finally, Mr. Montoya requests attorney fees on appeal pursuant to RAP 18.1, which provides for attorney fees on appeal where applicable law or contract grants to a party the right to recover reasonable attorney fees or expenses on review. *Corinthian Corp. v. White & Bollard, Inc.*, 74 Wn.2d 50, 442 P.2d 950 (1968). Mr. Montoya's claim for attorney fees is based on a provision in the promissory note. Having held the promissory note violated the usury statute, there is no basis upon which to award attorney fees on appeal and the request for attorney fees is denied.

Accordingly, we reverse the trial court judgments in favor of Mr. Montoya. We hold the promissory notes violated the usury laws and the consumer protection statute; thus Mr. Montoya is not entitled to the $1,751.25 attorney fees previously awarded under the promissory note. We remand to the trial court (1) to enter judgment for the Cuevases for attorney fees per their affidavit;[2] (2) to determine and enter judgment for the Cuevases' costs and damages under the usury and consumer protection statutes[3] (but limited to one recovery); (3) to enter judgment for the Cuevases for one–half the closing costs paid by them due to Mr. Montoya's exercise of their power of attorney; and (4) to enter judgment for Mr. Montoya for any remaining allowable attorney fees under quantum meruit.

In summary, the Cuevases will be entitled to judgment against Mr. Montoya for attorney fees, costs and damages. Mr. Montoya will be entitled to judgment against the Cuevases in quantum meruit for the value of his services, except those to enforce the promissory notes and those

---

[2]We hold the Cuevases' attorney fees for trial and appeal, in the total amount of $8,942.70, per their affidavit on appeal, are reasonable.

[3]We note the Cuevases must prove actual damages and the limits are as noted previously in our opinion.

treated as interest under the usury statute and thereby disallowed.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

GREEN and MUNSON, JJ., concur.

After ordering publication, further reconsideration denied August 11, 1987.